## PULLMAN PALACE-CAR CO. v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. May 2, 1893.)

### No. 30.

INJUNCTION—RESTRAINING ACTION AT LAW.

A railroad company sold an interest in certain cars to a car company, leased the remaining interest therein to the car company, and made a contract with the car company for the operation of the cars by the latter, with a division of the profits. The contract provided that the railroad company might terminate the lease, and should then pay the car company for its interest in the cars. The railroad company terminated the lease without paying for the car company's interest. *Held* that, on being sued at law for the value of the car company's interest in the cars, the railroad company could not enjoin the prosecution of such action on the ground that the car company had not fairly divided the profits, since the various branches of the contract were totally distinct. 49 Fed. Rep. 409, reversed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois, Northern Division.

In Equity. Bill by the Chicago, Milwaukee & St. Paul Railway Company against the Pullman Palace-Car Company to surcharge an account, and to restrain the prosecution of an action at law. Complainant obtained an injunction. See 49 Fed. Rep. 409. Defendant appeals. Reversed.

For a subsequent opinion relating to the accounting, see 50 Fed. Rep. 24.

Isham, Lincoln & Beale, for appellant.

Edwin Walker, for appellee.

Before WOODS, Circuit Judge, and BUNN and JENKINS, District Judges.

JENKINS, District Judge. On the 22d day of September, 1882, the parties entered into agreement, whereby—First. By the first article thereof, the railway company sold to the Pullman Company an undivided one-fourth of each of 28 named sleeping cars then operated on the appellee's line of railway, and leased to the Pullman Company the remaining undivided three-fourths of each of such cars for a term commencing September 30, 1882, and continuing until the termination of the contract set forth in the third article of the agreement, and agreed that if additional sleeping or hotel cars should be required for the accommodation of travel, or if it should become necessary to replace the cars named with new ones, the railway company would defray three-fourths of the expense of the manufacture of such cars. Second. By article third of the agreement

the Pullman Company was given the exclusive right, for the term of 15 years from September 30, 1882, to furnish such sleeping cars as should be required upon lines owned or controlled by the railway company, with certain exceptions not necessary to be considered. The Pullman Company should provision and operate the hotel cars, and operate the sleeping cars, and receive the fares for their use, and for meals, and have the general control of the sleeping and hotel car service of the railway company, according to the particular provisions and regulations of the contract. The Pullman Company was required to keep accurate accounts of receipts and expenses arising from the operation of such cars over the lines of railway contemplated, which were to be open to the inspection of the railway company at all reasonable times; the books of account to be balanced at least monthly, and the balance to be borne or paid by or to the party thereto entitled should be paid during the succeeding month, the parties sharing in the profits or losses of the venture in the proportion of their respective ownership of the cars. There was reserved to the railway company the option to terminate the contract at the end of 5, 8, or 11 years from September 30, 1882, upon notice, in writing, of six months prior to the day on which it might elect to have the agreement end. The railway company agreed, in case of such termination by its election, to purchase the undivided interest of the Pullman Company in the hotel and sleeping cars so jointly owned, and pay the fair cash value thereof, to be determined by arbitrators to be selected as provided in the contract.

The cars were operated under this agreement until its termination. On the 23d day of October, 1889, the railway company exercised the option reserved, and elected to terminate the agreement on the 30th September, 1890, and notified the Pullman Company thereof. Subsequently, as charged by the appellee, the value of the cars was adjusted by the parties at $416,906.38, less the amount due for certain repairs, and, as charged by the appellant, the value of its interest in the cars was adjusted by the parties at $105,000, which was agreed to be paid by the appellee on the 10th day of November, 1890; but payment was refused upon the ground that the correctness of the monthly accounts of the Pullman Company was disputed, and the railway company, without payment of the sum or any part of it, took possession of and retained the cars to its exclusive use. On the 24th June, 1891, the Pullman Company brought suit in trover in the court below against the railway company for the conversion of its interest in the cars, and for damages. On the 3d day of August, 1891, this bill was filed by the railway company, seeking to surcharge, for error, the monthly accounts rendered by the Pullman Company, and to enjoin the suit at law brought by the latter company. On the 31st day of December, 1891, an order was made by the court below, restraining the prosecution of the action at law, with leave to the Pullman Company to file a cross bill herein, if it should be so advised. This latter pro-

vision was presumably made to permit that company to assert and recover in this suit the value of its interest in the cars. The Pullman Company brings here for review this restraining order.

We are of opinion that the order restraining the prosecution of the suit at law was improvidently granted. The written agreement of the parties comprehends several distinct contracts: (1) a sale by the railway company of an undivided one-fourth interest in the cars; (2) a lease by the railway company to the Pullman Company of its undivided three-fourths interest in the cars; (3) a contract for the operation by the Pullman Company of the sleeping and hotel car service, with division of profits; (4) a contract by the railway company, if it terminated the lease as it might, to pay the Pullman Company the value of its undivided one-fourth interest in the cars. These contracts are not inter-dependent, but totally distinct. They are not so related to each other that the enforcement of one in any way affects the other, or requires investigation of the other. The proceeding to surcharge the account is an equitable proceeding. The claim for the value of the cars is wholly a legal demand. Equity cannot enforce the latter claim, or entertain jurisdiction thereof, the bill to surcharge the accounts in no way attacking the claim involved in the suit at law. The principles upon which equity intervenes to restrain the prosecution of proceedings at law are elementary and familiar, but this case does not fall within them. There is not here even the pretense that the prosecutor of the suit at law is irresponsible, so that it would be inequitable to permit the recovery of a large sum of money, when the complainant would be unable to collect the amount which might be awarded upon the accounting, if one should be decreed. Nor is there here any ground for equitable set-off. There is as yet no ascertained balance found due the complainant, and there is shown no equity demanding that the railway company should be protected against the demand asserted against it. Rawson v. Samuel, Craig & P. 178.

Without stopping now to consider whether the bill in equity can be sustained, it is sufficient to say that, if it can be, we perceive no valid reason for interfering with the prosecution of the suit at law. The railway company, during a period of eight years, was furnished monthly statements of the expenses and receipts attending the operation of the cars. It was paid monthly the amount thereby shown to be due. There was no objection to the accounts until the contract had been terminated by its election, and it was called upon to pay the value of the interest of the Pullman Company in the cars, of which the railway company desired to become the sole owner. It took no steps then to surcharge the account for error, remaining inactive for some nine months, and until suit at law had been brought to recover the value of the interest of the Pullman Company in the cars. It now does not, here, attack that claim, or assert any equity against its enforcement, but insists that it may retain the cars to the exclusion of the Pullman Company,

and without payment for them, pending a proceeding to investigate the accounts. We are not impressed with the equity, of the claim, and can find no ground upon which to sustain it.

The order appealed from is reversed.